The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. At all times pertinent to this claim, the employer-employee relationship existed between the parties, and the parties were bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
2. Defendant-employer is a duly qualified self-insurer under the provisions of the Workers' Compensation Act.
3. Plaintiff's average weekly wage is to be calculated from I.C. Form 22.
* * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff is a 56 year old female. Prior to her employment with defendant-employer, she worked for approximately 21 years as a seamstress in a furniture factory. She worked full time as a production employee. Her work as a seamstress was repetitive. While employed as a seamstress, plaintiff developed progressive pain in her fingers and hands, and was diagnosed with osteoarthritis. Dr. Peters performed surgery on plaintiff's fingers to repair osteoarthritic deformities.
2. Plaintiff began employment with defendant-employer in September, 1994, as an upholsterer at the employer's truck manufacturing plant in Mount Holly. She was laid off in 1985. Plaintiff returned to work with defendant-employer in September, 1986 in the electrical department, where she assembled dash panels. This work was performed with a power nut driver. Plaintiff also connected four or five wires to each panel. She worked on approximately 25 panels per day. She installed fittings on the panels with a wrench. Plaintiff's work was interrupted in that she changed from one activity to the next. No activity was performed on a sustained or continuous basis. Plaintiff's duties in the electrical department were not repetitive, nor did they require repetitive heavy work or frequent lifting. Plaintiff did not report any symptoms with her fingers, hands, wrists, or arms to her supervisor in the electrical department.
3. In February, 1991, plaintiff moved to the mirror build-up department, where she performed 12 difference jobs on a rotating basis. Plaintiff did not perform any activity on a sustained or continuous basis. Her activities in the mirror build-up department were not repetitive, nor did they require repetitive heavy work or frequent lifting. Plaintiff did not report any symptoms with her fingers, hands, wrists, or arms to her supervisor. Plaintiff sustained an injury to her chest at work on March 25, 1991, which she promptly reported. She also completed a written incident report for that injury. Plaintiff knew the procedures for reporting a work-related injury or condition.
4. Plaintiff injured her right ankle at home in July, 1991, and consulted Dr. Habashi, an orthopedic surgeon, on August 5, 1991, for treatment. She did not complain to Dr. Habashi of any symptoms with her fingers, hands or wrists.
5. On September 27, 1991, Dr. Habashi admitted plaintiff to the hospital in Lincolnton for treatment of severe osteoarthritis, which resulted in dislocation and deformity of all fingers of her right hand. During her admission history and physical, plaintiff did not mention any symptoms of carpal tunnel syndrome, nor did she mention any problems associated with her work activities for defendant-employer. Plaintiff informed Dr. Habashi that the problems with her hands and fingers started many years earlier during her prior work as a seamstress. Plaintiff required extensive surgery to treat her severe osteoarthritic deformities. Osteoarthritis can be progressive and can cause inflammation and swelling of surrounding tissue.
6. Plaintiff testified that, during her employment with defendant-employer, she experienced symptoms of pain and numbness in her hands and arms. Plaintiff's testimony is inconsistent with other believable evidence, and the greater weight of the evidence does not support these allegations by the plaintiff. Accordingly, plaintiff's testimony as to the timing of her symptoms is not accepted by the undersigned as credible or convincing.
7. Plaintiff first complained of numbness in her hands during an office visit with Dr. Habashi on January 9, 1992. She had only worked one day with defendant-employer since her ankle injury in July, 1991, and had not worked at all since her surgery in September, 1991. During the time she was out of work, plaintiff performed her usual household duties. She washed and ironed clothes, and sewed, which was her hobby. Dr. Habashi diagnosed plaintiff with bilateral carpal tunnel syndrome, and plaintiff was informed of this diagnosis on January 12, 1992. Plaintiff's first notice of defendant-employer of her condition occurred on February 12, 1993, when she filed I.C. Form 18. She alleged an onset date for her alleged disease of September 27, 1991. Plaintiff's notice was not timely. There was no reasonable justification for plaintiff's delay in notifying the employer of her alleged occupational disease, and defendant-employer was prejudiced by this delay.
8. During the time plaintiff was under Dr. Habashi's care, she did not mention any activities at Freightliner which she felt caused or contributed to the problems with her hands. Carpal tunnel syndrome is a narrowing of the carpal tunnel due to scar tissue which develops as part of the aging process. It can develop from non-employment activities or inactivity. Plaintiff's many years of employment as a seamstress could have caused her carpal tunnel syndrome. Plaintiff's carpal tunnel syndrome can be explained by her long standing progressive osteoarthritic condition. Ordinary household activities can cause carpal tunnel syndrome. Dr. Habashi has treated many housewives for that condition.
9. Plaintiff's employment with defendant-employer did not place her at an increased risk of developing carpal tunnel syndrome over members of the general public not so exposed. There is not sufficient, convincing evidence to the contrary. Plaintiff's employment with defendant-employer was not a significant contributing factor to the development of carpal tunnel syndrome. Again, there is not sufficient convincing evidence to the contrary.
* * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. Plaintiff's testimony about the symptoms she allegedly experienced with her hands and arms during her employment with defendant-employer is not deemed credible or convincing, and is thus rejected by the undersigned. In all proceedings before the Industrial Commission, the Industrial Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. Dolbow v. HollandIndus., Inc., 64 N.C. App. 695, 308 S.E.2d 335 (1983),cert. denied. 310 N.C. 308, 312 S.E.2d 651 (1984). The Commission may accept or reject any or all of a witness' testimony. Plaintiff's testimony about symptoms she allegedly developed during her employment with the employer is inconsistent with other believable evidence. The Deputy Commissioner's note that he has also considered plaintiff's demeanor as a witness in judging credibility is duly noted and is deferred to by the undersigned.
2. Plaintiff failed to give defendant-employer timely notice of her alleged occupational disease. G.S. 97-58; G.S.97-22. No reasonable excuse has been established for such delay. Defendant-employer was prejudiced by plaintiff's failure to give timely notice of her alleged occupational disease. Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979). Plaintiff's claim is thus also barred by G.S. 97-58 and G.S. 97-22.
3. Plaintiff's employment with defendant-employer was not repetitive in nature, nor was plaintiff working in such a situation that she was doing repetitive heavy work or frequent lifting.
4. Plaintiff does not have an occupational disease. G.S.97-53. Plaintiff did not contract an occupational disease from her employment with defendant-employer. For a disease to be occupational under G.S. 97-53 (13), it must be: (1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be a causal connection between the disease and the claimant's employment. Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359
(1983). The evidence, inclusive of the medical evidence, fails to sufficiently or convincingly establish that plaintiff's employment with the employer placed her at an increased risk of developing carpal tunnel syndrome over members of the general public not equally exposed to her particular employment. Id.; G.S.97-53 (13). The medical evidence also fails to sufficiently or convincingly establish that plaintiff's employment was a significant contributing factor to her development of carpal tunnel syndrome. Id.
* * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Plaintiff's claim under the Workers' Compensation Act must be, and the same is HEREBY DENIED.
2. Each side shall pay its own costs, except defendant shall pay an expert witness fee of $215.00 to Dr. Habashi as previously ordered by the Commission.
This the __________ day of_______________________, 1995.
 S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _________________ J. RANDOLPH WARD COMMISSIONER
S/ _________________ BERNARD ALSTON DEPUTY COMMISSIONER
JHB/nwm 05/16/95